United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 8, 2007**

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

—————

m 06-20073

—————

AMPRO ENERGY, L.P.,

Plaintiff,

VERSUS

JASON P. FORGEY, ET AL.,

Defendants,

ATTORNEY PETER ANDREW KRAUS,

Movant-Appellant.

—————

Appeal from the United States District Court
for the Southern District of Texas
m 4:04-CV-3389

—————

Before SMITH, BARKSDALE, and DENNIS,
   Circuit Judges.

PER CURIAM:[*]

Peter Kraus appeals the imposition of sanctions. Finding no abuse of discretion, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited (continued...)

[*](...continued)
circumstances set forth in 5TH CIR. R. 47.5.4.

I.

After the instant lawsuit was filed, Kraus consulted with defendant Stream Gas & Electric, Ltd. ("Stream"), about potentially filing counterclaims. Kraus then contacted counsel for plaintiff Ampro Energy, L.P. ("Ampro"), to ascertain the status of the suit.[1] On October 31, 2005, Ampro filed a status report with the court that listed Kraus as counsel for several defendants. The status report included, as Exhibit 13, an e-mail exchange between Kraus, plaintiff's counsel, and Snyder, an executive of Stream, in which plaintiff's counsel asked whether Kraus's clients would execute a mutual release of claims. Kraus responded with the following:

> That would depend on the scope of the release. My clients feel you [*sic*] clients' actions in challenging [Stream]'s startup damaged them, and are likley [*sic*] not going to sign a release at this time to forfeit the right to pursue appropriate relief if they choose. That said, I'll be happy to review your proposed release.

Snyder responded that there would be no release and that the suit should proceed.

Three days later, on November 3, the court issued an order stating that a conference would be held on November 16, and "the remaining individual parties must appear with their counsel." Five days after the order was issued, Kraus e-mailed plaintiff's counsel about the October 31 status report and stated that "[a]lthough I have sent you correspondence indicating I represent Stream in certain matters, I have never entered an appearance as counsel of record for any party in Ampro v. Forgey." He suggested that plaintiff's counsel refrain from referring to him as counsel of record and correct any representations "[t]o the extent that [they] require correcting."

On November 10, Dawna Kelly, the district court's case manager, faxed Kraus a copy of the order with a personal note that the court "expects youSSand your former clientsSSat the hearing." Kraus e-mailed Kelly, stating his surprise at being summoned to the conference, because he had "never entered any appearance as counsel for any party in this lawsuit." He explained his belief that the status report had incorrectly identified him as counsel for Stream and Rodriguez.

On November 14, the court responded to Kraus via e-mail, stating, "I understand your limited participation. I expect you here November 16th." Kraus responded that he understood and that he was in the process of negotiating a final resolution of Ampro's claims against Stream and Rodriguez.

Despite the court's order, on the evening before the conference Kraus prepared an e-mail, apparently to Kelly, stating that the parties had reached an agreement, and opposing counsel would provide it to the court at the hearing. Kraus then said that he would not appear at the hearing, because "all claims and potential claims of any potential clients of mine will be disposed of by the agreed order of dismissal with prejudice." Kraus did not send the e-mail to Kelly or the court, but only to opposing counsel.

---

[1] The introductory paragraph of the e-mail stated the following:

> My name is Peter Kraus of the firm Waters & Kraus of Dallas. I am contacting you in connection with our firm's representation of Rob Snyder and his newly-created company, Stream Energy, in regard to the ongoing litigation in Federal District Court in Houston with your client, Ampro Energy, L.P.

2

Kraus did not appear at the hearing, and "[b]ecause he ignored the court's orderSSand subsequent e-mailSSto appear," the court ordered sanctions of $1,000. Kraus filed a motion apologizing and asking the court to reconsider, asserting that the court lacked jurisdiction to issue sanctions because he was not a "party's attorney" under Federal Rule of Civil Procedure 16(f). The court denied the motion, finding that Kraus had told opposing counsel that he represented Snyder and Stream and had told the court that he was negotiating on behalf of Stream and Rodriguez, expected to submit a final order on their behalf, and understood the court's order for him to appear.

## II.

"This Court reviews the imposition of sanctions for an abuse of discretion." *Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 208 (5th Cir. 1998) (quoting *Matta v. May*, 118 F.3d 410, 413 (5th Cir.1997)). "A court abuses its discretion to impose sanctions when a ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* Rule 16(f) authorizes sanctions "[i]f a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference."

Kraus contends that the district court lacked jurisdiction to impose sanctions on him because he was not a "party's attorney." The court found, however, that Kraus had told plaintiff's counsel that he was representing Stream and that he was negotiating on behalf of Stream and Rodriguez and expected to submit a final order. In addition, the October 31 status report includes an e-mail from Kraus to plaintiff's counsel in which he refers to several of the defendants as "my clients."

Kraus rests his argument on the fact that "[t]he only reference to appellant as counsel for Stream was in an incorrect statement in plaintiff's status report based on an assumption that appellant was acting as Stream's counsel in this case, and even that misstatement was promptly corrected by appellant to both Ampro and to the Court." But, as described above, this is not the only reference to Kraus as counsel. Kraus omits any mention of his communications stating that he represents parties to this suit and referring to such parties as his clients.

Although we are aware of no caselaw defining when an attorney becomes a "party's attorney" under Rule 16, we do not need such a definition today. Kraus is Stream's attorney under any definition of the word, because he stated that he was representing Stream, referred to Stream as his client, told the court he would be negotiating on behalf of Stream, and did negotiate on Stream's behalf.

The sanctions were not based on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Moreover, Kraus's thrice-repeated protestation that he will gladly pay the sanction to a charity if we will reverse the sanction rings hollow; either the sanction is reversible error, or it is not. There is no abuse of discretion, and the order imposing sanctions is AFFIRMED.